## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CAROLYN LUKE TEWS,

        Plaintiff,

v.                                    Case No.  3:20-cv-810-MMH-JBT

OFFICER T.L. TERRELL,

        Defendant.

_____

### O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 3; Motion), filed July 22, 2020, and Defendant's Memorandum of Law in Support of his Motion to Dismiss Plaintiff's Complaint With Prejudice (Doc. 6; Memo of Law), filed August 06, 2020 (collectively "Motion to Dismiss").  In the Motion to Dismiss, Defendant Officer T.L. Terrell, seeks dismissal of the claims in Plaintiff Carolyn Luke Tews' Complaint (Doc. 2; Complaint).  Tews filed her Response to Motion to Dismiss on September 10, 2020 (Doc. 11; Response).  Accordingly, this matter is ripe for the Court's consideration.

### I.    Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508, n.1 (2002); <u>see</u> <u>also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  <u>See</u> <u>Omar ex rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  <u>Jackson v. BellSouth Telecomm.</u>, 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).  The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (citations omitted); <u>see</u> <u>also</u> <u>BellSouth Telecomm.</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal")

(citations and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

## II.   Background

In her Complaint, Tews alleges that Officer Terrell violated her constitutional right to be free from unreasonable seizure under the Fourth and Fourteenth Amendment when he executed his arrest with excessive force. Complaint at 4.  Additionally, she alleges that Officer Terrell is liable under Florida state law for the tort of battery.  <u>Id.</u> at 5.  As the underlying facts of her claims, Tews asserts that Officer Terrell pulled her over while she was driving her car on February 9, 2016, because he suspected her of driving while intoxicated.  <u>Id.</u> at 2, ¶ 6.  Officer Terrell drove Tews a mile from where he pulled her over to conduct a field sobriety test.  <u>Id.</u> at 2, ¶ 8.  After conducting the test, Officer Terrell arrested Tews for driving under the influence.  <u>See</u> <u>id.</u> at 2, ¶ 9.  In doing so, Officer Terrell handcuffed Tews and placed her in the back of the patrol car.  However, Tews, who at 60 years of age was five feet one inch tall, and weighed 100 pounds, was able to slip the handcuffs off her wrist.

3

<u>Id.</u> at 2, ¶ 10, 12.  According to Tews, Officer Terrell was approximately a foot taller than she and double her weight.  <u>Id.</u> at 3, ¶ 12-13.

Tews asserts that upon realizing that Tews had freed her hands from the handcuffs in the back of the car

> Officer Terrell became enraged . . . and he pulled her out of his car and slammed her to the ground causing Ms. Tews serious physical injuries including but not limited to a concussion and damage to her jaw and teeth including a tooth having been dislodged and aggravation of a prior shoulder injury.

<u>Id.</u> at 3, ¶ 14.  Tews also lost consciousness, suffered ongoing mental disorientation, and continues to suffer from nerve damage and numbness in her face and lips.  <u>Id.</u> at 3, ¶ 17-18.  Tews maintains that immediately leading up to the incident she was in "obvious mental distress" and ". . . expressed suicidal thoughts even imploring Officer Terrell to kill her."  <u>Id.</u> at 3, ¶ 15-16.  Tews alleges that in using his full strength to slam Tews to the ground, Officer Terrell used excessive and unnecessary force and ". . . knowingly and intentionally or wantonly [struck] her head upon the paved surface."  <u>Id.</u> at 3, ¶ 16.

### III.   Summary of the Arguments

In Count I, Tews asserts a federal excessive force claim based on the force Officer Terrell used to effectuate her arrest.  Officer Terrell seeks to dismiss this claim, asserting that he is entitled to qualified immunity.  Motion at 1;

4

Memo of Law at 7-11.  In Count II, Tews brings a state law tort claim for battery against Officer Terrell.  Complaint at 5.  In his Motion to Dismiss, Officer Terrell asserts that Tews has failed to assert sufficient facts to establish that Officer Terrell is not entitled to sovereign immunity under Florida Statutes section 768.28(9)(a).  Memo of Law at 1-2.  In response to the Motion to Dismiss, Tews maintains that she has sufficiently pleaded facts to show that Officer Terrell is not entitled to qualified immunity or sovereign immunity in regard to either claim.  <u>See</u> <u>generally</u> Response.  The Court will first address the excessive force claim and then turn to the state law tort claim for battery.

## IV.  Discussion

### a.  Count I: Excessive Force Claim

The doctrine of "[q]ualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  As a result, this defense protects from suit "'all but the plainly incompetent or those who knowingly violate the law.'"  <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  Indeed, as "'government officials are not required to err on the side of caution,' qualified immunity is appropriate in close cases where a reasonable officer could have

5

believed that his actions were lawful." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1200 (11th Cir. 2002) (quoting <u>Marsh v. Butler Cnty.</u>, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001)).

In order to be entitled to qualified immunity, the defendant must first establish that his conduct was within the scope of his discretionary authority. <u>See</u> <u>Webster v. Beary</u>, 228 F. App'x 844, 848 (11th Cir. 2007) (per curiam); <u>Lee</u>, 284 F.3d at 1194.  Here, neither party contends that Officer Terrell was acting outside the scope of his discretionary authority when he arrested Tews.[1]  <u>Lee</u>, 284 F.3d at 1194 (finding that "there can be no doubt that the [officer] was acting in his discretionary capacity when he arrested [the plaintiff]" even though the plaintiff asserted that the officer used excessive force in effectuating the arrest). Therefore, the burden shifts to Tews "to show that qualified immunity is not appropriate." <u>Lee</u>, 284 F.3d at 1194.   To do so, Tews must establish two elements: (a) that the defendant violated a constitutional right, and (b) the right violated was clearly established.  <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  In his Motion to Dismiss, Officer Terrell argues that Tews has failed to sufficiently

---

[1] "'A government official acts within [her] discretionary authority if the actions were (1) undertaken pursuant to the performance of [her] duties and (2) within the scope of [her] authority.'"  <u>Jones v. City of Atlanta</u>, 192 F. App'x. 894, 897 (11th Cir. 2006) (per curiam) (quoting <u>Lenz v. Winburn</u>, 51 F.3d 1540, 1545 (11th Cir. 1995)).

state a claim that Officer Terrell violated Tews' constitutional rights.  <u>See</u> Memo of Law at 9.   Tews asserts that Officer Terrell violated her Fourth and Fourteenth Amendment right to be free from unreasonable search and seizure when he employed excessive force to effectuate her arrest.  <u>See</u> Complaint at 4.

As a preliminary matter, the Court finds that Tews' claim must be analyzed under the Fourth Amendment rather than the Fourteenth Amendment.  According to the Supreme Court:

> <u>all</u> claims that law enforcement officers have used excessive force – deadly or not – in the course of arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.   Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

<u>Graham v. Connor</u>, 490 U.S. 386, 395 109 S. Ct. 1865, 1871, 104 L. Ed.2d 443 (1989).

 "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force during the course of a criminal apprehension."  <u>Oliver v. Fiorino</u>, 586 F.3d 898, 905 (11th Cir. 2009).  However, "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof

to effect it.'" <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1347 (11th Cir. 2002) (citation omitted).   Indeed, the Eleventh Circuit recognizes that "the typical arrest involves some force and injury."  <u>See</u> <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1350 (11th Cir. 2002).  "A constitutional violation only occurs when the officer's use of force is 'objectively unreasonable' in light of the totality of the circumstances at the time the force is used."  <u>Glover v. Eighth Unknown D.E.A. Agents/Drug Task Force Agents from Birmingham, Ala. Task Force</u>, 225 F. App'x 781, 785-86 (11th Cir. 2007) (citation omitted).

In evaluating a claim of excessive force, courts must use a "standard of reasonableness at the moment." <u>Graham</u>, 490 U.S. at 396, 109 S. Ct. at 1872.

> We do not sit in judgment to determine whether an officer made the best or a good or even a bad decision in the manner of carrying out an arrest.  The Court's task is only to determine whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense.

<u>Buckley v. Haddock</u>, 292 F. App'x 791, 794 (11th Cir. 2008).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 396-97, 109 S. Ct. at 1872.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  <u>Id.</u> at 396, 109 S. Ct. at 1872.  Because "reasonableness" cannot be

defined precisely or applied mechanically, the Supreme Court has instructed that:

> its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.

Id.; see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).  A court uses these factors, referred to as the Graham factors, to analyze the reasonableness of an officer's use of force. See Lee, 284 F.3d at 1198.  In this regard the Eleventh Circuit instructs that "Graham dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."  Id.  In addition to the Graham factors, the Eleventh Circuit has also set forth the following considerations for determining if force was reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."  Vinyard, 311 F.3d at 1347 (citing Lee, 284 F.3d at 1197-98). Significantly, "an officer will be entitled to qualified immunity . . . if an objectively reasonable officer in the same situation could have believed that the force used was not excessive."  Vinyard, 311 F.3d at 1346.

Particularly important to the determination of whether any force used by an officer was excessive, and relevant here, is the question of whether the arrestee complied with the officer's commands, or whether the arrestee resisted the officer's attempts to effectuate the arrest.  See Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (officer's use of taser against plaintiff reasonable where plaintiff was "hostile, belligerent, and uncooperative" with officer in the course of the arrest); Hines v. Jefferson, 338 F. Supp. 3d 1288, 1302 (N.D. Ga. 2018), aff'd, 795 F. App'x 707 (11th Cir. 2019) (officer's use of chokehold was reasonable where plaintiff admitted to resisting and struggling against officer); Crutcher v. Athens Police Dep't, NO. CV-10-S-1176-NE, 2014 WL 5521944, at *6 (N.D. Ala. Oct. 31, 2014) (officer's use of chokehold that resulted in plaintiff losing consciousness not unreasonable where plaintiff actively resisted arrest). Notably, the Eleventh Circuit has held that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Saunders v. Duke, 766 F.3d 1262, 1267 (11th Cir. 2014) (citations and internal quotations omitted).  Indeed, in Saunders, the Eleventh Circuit concluded that the district court erred in dismissing a plaintiff's Fourth Amendment excessive force claim on qualified immunity grounds, stating

> [t]hough he was not resisting or posing a threat to anyone, one of the agents allegedly "slammed" his head into the pavement with "extreme force." If these allegations are true, and we must assume that they are at this stage of the case, that force was unnecessary, disproportionate, and constitutionally excessive.

10

Id. at 1268 (citations omitted).  Even if the complaint suggested that plaintiff did disobey an order by lifting his head off the ground, the Eleventh Circuit found that "minor transgression" did not necessarily mean the force used was reasonable or that the officer was entitled to qualified immunity.  Id. at 1269 (citations omitted).

In arguing that he is entitled to qualified immunity, Officer Terrell relies on a video recording from the backseat camera in his police cruiser.[2]  Memo of Law at 5.  Specifically, Officer Terrell argues that the only constitutional violation alleged in the Complaint is that he used excessive force to take Tews to the ground.  Id. at 11.  Officer Terrell maintains that the video shows "[Tews'] active resistance and continued lack of cooperation" which led to the take-down.  See id. at 10-11.  He asserts that the force he used was "lawfully necessary to overcome [Tews'] resistance" and thus Tews has failed to sufficiently state a claim for a constitutional violation under the Fourth Amendment.  See id.

---

[2] When ruling on a Motion to Dismiss, the Court generally only considers the Complaint and the documents attached thereto.  Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007) (citation omitted).  However, an exception exists where "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  Id. (citation omitted).  Here, Tews refers to the video at issue in her Complaint.  Complaint at 3-4, ¶ 20.  The video is central to Tews' claim because it is a recording of the entirety of the events surrounding both of her causes of action.  Additionally, despite making the conclusory assertion that the video is "not germane to matters at issue at this stage," Tews' Response discusses the contents of the video at length.  Response at 9-11.  Neither party disputes the contents of the video and Officer Terrell has attached it to his Motion to Dismiss.  See Defendant's Notice of Filing Exhibit in Support of his Motion to Dismiss (Doc. 7).  Therefore, the Court properly considers the video in ruling on the Motion to Dismiss.

A review of the video footage does little to resolve the issue of whether Tews was resisting at the time of the take-down.  This is so because Officer Terrell's body blocks the camera's view during the critical time preceding the take-down, there is little to no lighting, and the quality of the footage is poor. As a result, it is impossible for the Court to observe the events immediately leading up to the take-down or the take-down itself. In the moments before Officer Terrell's take-down of Tews, he can be heard repeatedly telling Tews to "stop resisting."  In response, Tews repeatedly says "I'm not resisting."  Because the video does not conclusively show whether or not Tews was actually resisting at the time of the take-down Officer Terrell's reliance on it is unavailing.  While the video does not appear to support the assertion that Officer Terrell became enraged, it does not foreclose Tews' claim that the force he used in taking her to the ground was unnecessary and constitutionally excessive.  Accepting the factual allegations set forth in the complaint as true, see Ashcroft, 556 U.S. at 678, and drawing all reasonable inferences in favor of Tews, see Omar ex rel. Cannon, 334 F.3d at 1247, where Tews version of the need for force is not contradicted by the video recording, Officer Terrell's Motion to Dismiss is due to be denied.

### b. Count II: State Law Battery Tort Claim

Tews also asserts a claim against Officer Terrell for battery under state law.  Complaint at 5.  Officer Terrell seeks dismissal of this claim on the grounds

of immunity under Florida Statutes section 768.28(9)(a).  Memo of Law at 12-13.  Specifically, Officer Terrell asserts that Tews' Complaint fails to allege sufficient facts under which Officer Terrell would be subject to liability for a state law tort claim of battery.  Id. at 12.  In addition, Officer Terrell argues that even if he was denied immunity, Tews fails to allege sufficient facts to state a claim for battery under Florida law.  See id. at 13.

If Officer Terrell is entitled to statutory immunity, Tews' state law claim for battery must be dismissed.  Florida law provides immunity to state employees

> for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his or her employment of function, unless such officer[s] . . . acted in bad faith or with malicious purpose or in any manner exhibiting wanton and willful disregard of human rights, safety, or property.

FLA. STAT. ANN. § 768.28(9)(a).  Accordingly,

> in order for a plaintiff to succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the public office official either acted outside the scope of his employment or in bad faith.  The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement.  This duty cannot be satisfied by mere conclusory allegations. Without support, the complaint must fail.

Brown v. McKinnon, 964 So.2d 173, 175 (Fla. 3d DCA 2007) (internal citations omitted). Courts construing the bad faith prong of section 768.28 use the actual malice standard, Parker v. State Bd. of Regents ex rel. Fla. State Univ., 724 So.2d 163, 167 (Fla. 1st DCA 1998), which means the conduct must be

committed with "ill will, hatred, spite, [or] an evil intent." <u>Reed v. State</u>, 837 So.2d 366, 368–69 (Fla. 2002).   Conduct meeting the wanton and willful standard is defined as "worse than gross negligence," <u>Sierra v. Associated Marine Insts., Inc.</u>, 850 So.2d 582, 593 (Fla. 2d DCA 2003), and "more reprehensible and unacceptable than mere intentional conduct." <u>Richardson v. City of Pompano Beach</u>, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987). <u>See also</u> <u>Kastritis v. City of Daytona Beach Shores</u>, 835 F.Supp.2d 1200, 1225 (M.D. Fla. 2011) (defining these standards). Additionally, courts are reluctant to strip officers of their immunity under section 768.28(9)(a) of the Florida Statutes.  As such, a threadbare recital that a defendant "acted maliciously and in bad faith is conclusory" and insufficient. <u>Brivik v. Law</u>, 545 F. App'x 804, 807 (11th Cir. 2013).

In this regard, Tews' Complaint is devoid of any allegations that Officer Terrell acted with "ill will, hatred, spite, [or] an evil intent," <u>Reed</u>, 837 So.2d at 368-69, or any facts suggesting that Officer Terrell "acted maliciously and in bad faith." <u>Brivik</u>, 545 F. App'x at 807.  The allegations in the Complaint suggest nothing more than "mere intentional conduct." <u>See</u> Complaint at 5; <u>Richardson</u>, 511 So.2d at 1123.  Accordingly, Tews' state law claim for battery is due to be dismissed.

**V.    Conclusion**

For the foregoing reasons, to the extent Officer Terrell seeks dismissal of Tews' Fourth Amendment excessive force claim in Count I on the grounds of qualified immunity, the Motion to Dismiss is due to be denied.  With regards to Tews' state law battery claim in Count II, because she has failed to allege facts plausibly stating a claim, the Motion to Dismiss will be granted.

Accordingly, it is **ORDERED:**

Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 3) is **DENIED** in part and **GRANTED** in part.

> a. The Motion to Dismiss is **denied in part** as to the excessive force claim in Count I.
>
> b. The Motion to Dismiss is **granted in part** to the extent that the state law tort claim for battery in Count II is **dismissed**.

**DONE AND ORDERED** in Jacksonville, Florida this 19th day of February, 2021.

MARCIA MORALES HOWARD
United States District Judge

lc28

Copies to:
Counsel of Record